IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOURCE ARCHITECHNOLOGY SYSTEMS, INC., | ) ) ) |
| Plaintiff, | ) 2:19-cv-376-NR ) ) |
| v. | ) ) ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

Plaintiff Source Architechnology filed this insurance-coverage action against Defendant State Farm to recover for damage sustained to its insured commercial building. Source's next-door neighbors placed wooden rail ties on its property, which laid against the exterior wall of Source's building. This caused the soil beneath Source's property to shift, which caused significant damage to the structure of Source's building. Source turned to its insurer, State Farm, to cover the loss. But State Farm denied coverage, primarily relying on an "earth-movement" exclusion in the policy. This prompted Source's present lawsuit, seeking a declaration that State Farm owed it coverage under the policy, as well as breach-of-contract damages.

The parties agree that there are no genuine disputes of material fact. They have cross-moved for summary judgment, and have asked this Court to essentially declare their rights under the policy. After carefully considering the parties' arguments, the Court finds that the earth-movement exclusion in the State Farm policy unambiguously bars coverage. Thus, the Court will

grant State Farm's motion for summary judgment, deny Source's cross-motion, and enter judgment in favor of State Farm.

## BACKGROUND

### I. Factual background.

Source, through its principals Mark and Susan Viola, purchased a State Farm Business Owners Coverage Form Insurance Policy, with a policy period of December 1, 2018 to December 1, 2019, which covered certain Source property in Pittsburgh, Pennsylvania. [ECF 29-1; ECF 31-2]. During that time period, Source claims that it discovered that its insured commercial building was damaged. It discovered damage to the walls of the interior, as well as significant structural damage in the form of a bowed exterior block wall, which was in danger of potential collapse. [ECF 31-11, ¶¶ 4-11].

Both parties agree with the assessment by State Farm's expert, forensic engineer Mark Sokalski, as to what caused the damage—the neighboring landowners, Marty and Joan Kury, had stored wooden railroad ties against the structure. [ECF 28, p. 11; ECF 31, p. 4]. Mr. Sokalski concluded that the storage of the wooden ties against the rear wall of Source's building, in conjunction with the weather of late December 2017 and early 2018, created the wall movement. [ECF 28, p. 4; ECF 31, p. 5]. Specifically, he concluded that: (1) the wooden ties added downward weight to the soil below; (2) this reduced evaporation below the wooden ties, causing the soil to retain more moisture; and (3) this thermally insulated the ground from the outside air temperature, which permitted the ground below the wooden ties to freeze more slowly and expand. *See* [ECF 29-4, 27:24-28:2] (the cause of the property damage was "earth movement due to the weight of the earth, plus expansion of the water in it due to ice and freeze. So the earth was wet, and when it froze, it expanded.").

## II. Procedural background.

In 2018, Source made a claim under the State Farm policy relating to the damage to its building. State Farm investigated and denied Source's coverage claim under the policy, relying on a number of exclusions, but primarily, on an earth-movement exclusion. [ECF 29-1, ¶ 16; ECF 31-7]. Source sued State Farm for declaratory judgment, breach of contract, and bad faith in the Allegheny County Court of Common Pleas. On April 3, 2019, State Farm removed the case to this Court. [ECF 1]. On May 1, 2019, the parties jointly agreed to dismiss the bad-faith claim without prejudice, so all that remains are the declaratory judgment and breach-of-contract claims. [ECF 9].

Fact and expert discovery are complete. State Farm and Source cross-moved for summary judgment on the remaining claims. [ECF 27; ECF 30]. The motions are fully briefed and ready for disposition.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the inquiry is whether the evidence presents "a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, a court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007) (citation omitted).

## DISCUSSION & ANALYSIS

State Farm advances one main argument as to why it should be granted summary judgment: the earth-movement exclusion bars coverage. In opposition and on cross-motion, Source argues that the exclusion does not bar

coverage for "manmade" causes of damage (like the wooden railroad ties), and, in any event, the exclusion is ambiguous and should be read in favor of Source. For the reasons discussed below, the Court agrees with State Farm. The exclusion is unambiguous and applies here.[1]

I.   **The law on policy interpretation.**

As an initial matter, the Court applies Pennsylvania law because this is a diversity case, and no party contends that any other state law applies to the interpretation of the policy. *See J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004).

Pennsylvania law provides several well-settled principles governing the interpretation of insurance policies. *Id.* at 363. "As a threshold matter, the task of interpreting a contract is generally performed by a court, rather than by a jury. The goal of that task is . . . to ascertain the intent of the parties as manifested by the language of the written instrument." *Id.* (cleaned up). "A policy must be read as a whole and its meaning construed according to its plain language." *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 163 (3d Cir. 2011) (citations omitted).

"An ambiguity exists when the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Pilosi*, 393 F.3d at 363 (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). "Where an insurance policy provision is ambiguous, it is to be 'construed against the insurer and in favor of the insured[.]'" *Id.* (quoting

---

[1] Because the Court finds that the earth-movement exclusion bars coverage, it need not and does not reach the applicability of any secondary exclusions raised by State Farm in its briefing.

*McMillan v. State Mut. Life Assur. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)).

"Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Courts should not distort the meaning of the language or strain to find an ambiguity. A contract is not rendered ambiguous merely because the parties disagree about its construction." *Meyer,* 648 F.3d at 164 (cleaned up).

In seeking coverage for a specific claim, the insured bears the initial burden of demonstrating that the claim falls within the policy's affirmative grant of coverage. *See Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996). "Where an insurer seeks to disclaim coverage on the basis of a policy exclusion . . . the insurer bears the burden of proving the applicability of the exclusion as an affirmative defense." *Gen. Refractories Co. v. First State Ins. Co,* 855 F.3d 152 (3d Cir. 2017) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)); *see also Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 383 (W.D. Pa. 2006) (Ambrose, J.) ("When, as here, an exclusion is asserted, it is the insurer's burden to show that the exclusion defeats coverage under the particular facts of the case.") (citing *Madison Constr*, 735 A.2d at 106).

## II. The State Farm earth-movement exclusion is unambiguous and applies to bar coverage.

Since the parties agree that the loss at issue falls within the policy's coverage grant,[2] the only issue that the Court must decide is whether the application of an exclusion bars coverage.

---

[2] While the parties dispute whether the policy is properly considered an "all-risk" policy, [ECF 31, p. 9; ECF 32, p. 2], the issue is immaterial to this case and the Court declines to address it.

> In relevant part, the earth-movement exclusion states:
>
> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .
>
> b. Earth Movement
> (1) Earthquake, whether combined with water or not, including any earth sinking, rising or shifting relating to such event;
> (2) Landslide, whether combined with water or not, including any earth sinking, rising or shifting related to such event;
> (3) Mine subsidence, whether combined with water or not, meaning subsidence of a man-made mine, whether or not mining actively has ceased; or
> (4) Earth sinking (other than "sinkhole collapse"), rising or shifting, whether combined with water or not, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, the action of water or any other natural forces; or improper compaction, site selection, excavation, retention, stabilization or any other external forces.

[ECF 29-1, p. 22; ECF 31-2, p. 6]. State Farm points to this earth-movement exclusion—specifically, section b(4) of the exclusion (earth sinking/rising/shifting)—and argues that this exclusion applies since the damage here was due to shifting soil conditions caused by an external force, namely, the placement of railroad ties on the soil and against Source's building.

Source argues that this exclusion does not apply because it only applies to natural causes of earth movement, not manmade causes. Upon review of the policy language at issue, the Court disagrees with Source's interpretation

of the exclusion. The exclusion clearly and unambiguously bars coverage for manmade causes. This is so for at least two reasons. First, the lead-in clause broadly states that the exclusion applies "regardless of" the cause. This language makes clear that the exclusion is not limited to only natural causes. Second, section b(4) precludes coverage for earth movement due to "external forces," which when read in context, is clearly intended to apply to manmade forces.

### A. The lead-in clause to the earth-movement exclusion broadly excludes coverage regardless of the cause of the earth movement.

The lead-in clause to the exclusion makes clear that the proximate cause of any earth movement is irrelevant. Whatever the cause, there is no coverage for earth movement, such as the soil conditions at issue in this case. The lead-in provision states, in relevant part, that State Farm does not cover an excluded event "regardless of": "(a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]"

Because this lead-in clause is so broad, the excluded event of earth movement is still excluded regardless of its causes being natural, manmade, or any combination of causes. Instructive in this regard is the Third Circuit's decision in *Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616 (3d Cir. 2011).

In *Colella*, the Third Circuit examined the same lead-in clause as here.[3] There, the policyholders argued that the State Farm exclusion for subsurface water damage did not apply because the leak at issue came from their own plumbing system, rather than from external plumbing. *Id.* at 620. The Third Circuit rejected that causation argument, affirmed the district court's grant of summary judgment in favor of State Farm, and reasoned that it saw "no way to interpret the words 'regardless of the cause' in a manner that provides coverage for the Colellas. The State Farm policy states that it excludes coverage for damage caused by water below the surface of the ground, regardless of the cause of the subsurface water." *Id.* at 621. The Third Circuit further stated: "Because the State Farm policy language is unambiguous, we must give effect to that language." *Id.* (cleaned up).

This case is no different than *Colella*. The lead-in clause here, as in *Colella*, makes no distinction as to the causal element that triggers the exclusion. The exclusion plainly applies "regardless of" the cause—a term that the Third Circuit declared to be unambiguous in a materially identical context.

The Court is also guided by district court decisions from this Circuit, which also hold that similar lead-in clauses trigger the earth-movement exclusion, regardless of the cause of the earth movement. *See Hughes v. State Farm Fire & Cas. Co.*, No. CIV.A. 3:2005-357, 2007 WL 2874849, at *9 (W.D. Pa. Sept. 27, 2007) (Gibson, J.) (holding that lead-in clause in State Farm's earth-movement exclusion form was unambiguous and barred coverage); *see also Gillin v. Universal Underwriters Ins. Co.,* No. CIV.A. 09-5855, 2011 WL 780744, at *7-*8 (E.D. Pa. Mar. 4, 2011) (interpreting similar (though not a

---

[3] The exclusion at issue in *Colella* was a subsurface-water exclusion. But that makes no difference to the Court's analysis here, given that the lead-in clause in *Colella* was the same as the one in the State Farm policy at issue.

- 8 -

State Farm) earth-movement exclusion with lead-in clause, and stating: "The Court finds that this clause is only capable of one construction, that is, when more than one cause is involved in a loss which includes one of the excluded events named under the lead-in clause, in this case, earth movement, there is no coverage regardless of whether the causes acted at the same time or in any sequence with the excluded event.").[4]

Comparing the lead-in clause here with the lead-in clauses in *Colella*, *Hughes*, and *Gillin*, the Court finds that coverage is barred. There is no dispute that the damage here was due to earth movement; the cause of that movement, whether natural or manmade, is immaterial under the plain terms of the exclusion's lead-in clause.[5]

---

[4] Source cites *Burgunder v. United Specialty Ins. Co.*, No. CV 17-1295, 2018 WL 2184479 (W.D. Pa. May 11, 2018) (Schwab, J.), to argue that the lead-in clause here does not alter the result. In *Burgunder*, the policy did not have a lead-in clause, but it did have a catch-all clause of sorts that stated that the "exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused." *Id.* at *4. Contrary to Source's argument, though, the court there did not interpret this catch-all provision, as the parties did not appear to make any arguments regarding its applicability. In fact, the court noted how the policy language there was different than that in *Gillin*—which is a policy closer to the one at issue in this case.

[5] It appears that the only court that has rejected this lead-in language is the Supreme Court of Appeals of West Virginia in *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W. Va. 1998). The court there declared that applying the lead-in clause would be "contrary to the reasonable expectations of policyholders." *Id.* at 14. This holding appears to be a misapplication of the reasonable-expectations doctrine. That doctrine would only apply where there was some conduct by the insurer that would alter the policyholder's reasonable expectations (*e.g.*, unilaterally expanding an exclusion); it doesn't allow the court to simply reject the plain language of the policy. *See UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) (explaining that the

> **B. The text of section b(4) of the earth-movement exclusion explicitly bars coverage for manmade causes of earth movement.**

Even setting aside the lead-in clause, the text of the exclusion makes clear that it applies to earth movement caused by manmade forces.

Recall section b(4) of the exclusion, which defines earth movement as including "soil conditions." Soil conditions then are described as follows: "Soil conditions include contraction, expansion, freezing, thawing, erosion, the action of water or any other natural forces; or improper compaction, site selection, excavation, retention, stabilization or any other external forces."

The parties agree that the key policy language here are these last two words: "external forces." State Farm argues that "external forces" means and encompasses manmade forces, such as the one at issue in this case. Source argues that the term "external forces" is ambiguous and thus must be construed in its favor. The Court agrees with State Farm's interpretation of the policy, and does not find this term to be ambiguous.

Initially, a policy may only be deemed ambiguous if it "is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Pilosi*, 393 F.3d at 363 (quoting *Med. Protective*, 198 F.3d at 103). "Courts should not distort the meaning of the language or strain to find an ambiguity. A contract is not rendered ambiguous merely because the parties disagree about its construction." *Meyer,* 648 F.3d at 164 (cleaned up). "That is, a court must refrain from torturing the language of a policy to create

---

reasonable-expectations doctrine is "intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy.") (citation omitted). In any event, the Court finds *Colella*, *Hughes*, and *Gillin* to be the better and more soundly reasoned authority on this issue.

ambiguities where none exist. In addition, wherever possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." *Pilosi*, 393 F.3d at 363 (cleaned up).

The Court is guided by the numerous cases throughout the country that have examined similar or identical State Farm policy language, and have almost uniformly found that the term "external forces" unambiguously excludes earth movement resulting from manmade causes. *See, e.g., Brice v. State Farm Fire & Cas. Co.*, 761 F. Supp. 2d 96, 102 (S.D.N.Y. 2010) (exclusion for "earth movement resulting from improper compaction, site selection or any other external forces" was unambiguous; exclusion barred coverage for damage caused by construction on neighboring lot); *Boteler v. State Farm Cas. Ins. Co.*, 876 So.2d 1067, 1069-70 (Miss. Ct. App. 2004) (damage from burst pipe was unambiguously excluded because "earth movement exclusion applies to damage arising from natural or external forces"); *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1046 (Alaska 1996) (exclusion for earth movement "from natural or external forces" was unambiguous and "encompasses both natural phenomena and human processes"); *Davis-Travis v. State Farm Fire and Casualty Co.*, 336 F. App'x 770, 774 (10th Cir. 2009) (citing *Bongen* and finding damage unambiguously excluded by earth-movement clause that stated in part: "Earth Movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces.").

Indeed, far from being ambiguous, the policy exclusion here has been viewed as a model of clarity. In *Matson-Forester v. Allstate Ins. Co.*, No. 1:12-CV-01838, 2014 WL 580267, at *5 (M.D. Pa. Feb. 12, 2014), the court found that an earth-movement exclusion was ambiguous specifically because it was

not worded like the State Farm exclusion. The court stated: "Cases in other jurisdictions provide examples of earth movement exclusions that clearly indicate an intent to fix the ambiguity associated with earth movement clauses and identified by [*Steele v. Statesman Ins. Co.*, 607 A.2d 742 (Pa. 1992)]. For example, [State Farm] earth movement exclusions have been held unambiguous by virtue of including events which could only be interpreted as manmade, or by expressly stating that the clause is not limited to natural events." *Id.* at *5 (citing *Brice*, 761 F. Supp. 2d at 102, and *Bongen*, 925 P.2d at 1046).

Beyond these cases, the plain language of "external forces," in the context of the policy, makes clear that it is unambiguous in that it clearly covers manmade forces. Pennsylvania law teaches that an insurance policy should be read in context, and, when appropriate, by use of the familiar canon of *ejusdem generis*. *See Steele*, 607 A.2d at 743; *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 520 (3d Cir. 2012) (applying Pennsylvania law). *Ejusdem generis* provides that: "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically mentioned." *Steele*, 607 A.2d at 743 (quoting Black's Law Dictionary at p. 270 (5th Ed. 1983)). In other words, a general term, when modified by specific terms, will be interpreted in light of those specific terms.

In section b(4), "soil conditions" is comprised of two lists, separated by a semi-colon. The first list describes natural forces: "[C]ontraction, expansion, freezing, thawing, erosion, the action of water ***or any other natural forces***." (emphasis added). The second list, though, describes manmade forces and, notably, ends with and includes the general term "external forces": "[I]mproper

- 12 -

compaction, site selection, excavation, retention, stabilization ***or any other external forces***." (emphasis added).  While the first part of the sentence clearly deals with natural causes (*e.g.*, freezing, thawing, and "other natural forces"), the second part clearly deals with manmade ones (*e.g.,* improper compaction, site selection, excavation, and "other external forces").  Applying the doctrine of *ejusdem generis*, the term "other external forces" is naturally read to apply to the same general kind or class of items in the list—*i.e.*, manmade forces.  *See Brice*, 761 F. Supp. 2d at 102 ("The references to 'improper [soil] compaction' and 'site selection' make clear that the exclusion is intended to include manmade events. The reference to 'any other external forces' clearly conveys the intention to exclude from coverage property damage resulting from earth movement caused by 'any' 'external' act, including human conduct.").[6]

Moreover, in order to find a policy term to be ambiguous, the language must be "reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Pilosi*, 393 F.3d at 363 (quoting *Med. Protective*, 198 F.3d at 103).  The Court cannot discern how "external forces" is reasonably susceptible to an interpretation that would cabin the term to only naturally occurring external sources.  The ordinary definition of the term "external" is "arising or acting from outside."  *External*, Merriam-Webster Online Dictionary (July 22, 2020), https://www.merriam-

---

[6] This reading of the policy is also bolstered by the lead-in clause. Section d of the lead-in clause refers to losses arising "from natural or external forces." [ECF 29-1, p. 22; ECF 31-2, p. 6].  This language plainly juxtaposes "natural" and "external," with "external" necessarily meaning something other than "natural."  *See Sweger v. Chesney*, 294 F.3d 506, 517-18 (3d Cir. 2002) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise.") (cleaned up).

webster.com/dictionary/external (citing as an example: "external force"). There is nothing intrinsic in the words "external forces" that would suggest something only naturally occurring. Pennsylvania law instructs courts not to strain to find ambiguities. *See Meyer,* 648 F.3d at 164. Short of straining, the Court cannot discern anything ambiguous about the term "external forces."[7] In short, the Court finds that section b(4) of the policy bars coverage for earth movement caused by external forces. Those external forces can be manmade ones, such as the placement of the railroad ties against the Source building in this case. This language is clear, and it forecloses coverage in this case.

Finally, Source relies heavily on *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32 (3d Cir. 1987), and *Steele*, 607 A.2d 742, to support its arguments that the policy here is ambiguous, or only covers natural causes. Source also cites two cases from this Court for the same proposition. *See Totty*, 455 F. Supp. 2d 376; *Burgunder*, 2018 WL 2184479.

The Court has reviewed and considered those cases, and none of them concerned the same earth-movement exclusion at issue here. Notably, none of those cases considered a similarly broad lead-in clause, or policy language on earth sinking/soil conditions caused by "external forces." As such, the Court

---

[7] The Court notes that there are two outlier cases in which courts found the term "external forces" to be ambiguous. *Murray*, 509 S.E.2d at 10-13; *Cox v. State Farm Fire & Cas. Co.*, 459 S.E.2d 446, 447–48 (Ga. Ct. App. 1995). Respectfully, the Court disagrees with those decisions. In those cases, the courts essentially strained to interpret "external forces" to mean something connected to the outside world or nature. "External" certainly means "arising or acting from outside," but, when read in the context of the policy, it means a force arising from is outside the earth movement at issue (*i.e.*, the efficient cause of the soil condition). It doesn't mean "outdoors" or something in nature. That is an unreasonable interpretation of this policy language, and the Court rejects it.

finds Source's cases to be inapposite to the policy language now before the Court.

## **CONCLUSION**

For all these reasons, State Farm's motion for summary judgment is GRANTED and Source's cross-motion for summary judgment is DENIED. Judgment will be entered in favor of State Farm on all counts of the complaint. An appropriate order follows.

DATED this 24th day of July, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge